## The Pennsylvania and Delaware Railroad Co., with notice, &c., *versus* Leuffer.

A civil engineer is not a "laborer" or "workman" within the meaning of the resolution of 21st January 1843, and its supplement, the Act of 4th April 1862, and is not entitled to the lien provided thereby upon the property of a railroad, for the value of his services rendered in its construction.

March 22d 1877. Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ. SHARSWOOD, J., absent.

Error to the Common Pleas of *Chester county* : Of July Term 1876, No. 85.

This was a scire facias issued by George W. Leuffer against the Pennsylvania and Delaware Railroad Company, with notice to the Pennsylvania Railroad Company. The plaintiff was a civil engineer, and as such rendered services to the first above-mentioned road in the course of its construction. He brought suit for the value of these services and recovered a judgment for $1919.13, upon which this scire facias issued. The only question was whether a civil engineer was a "laborer" or "workman" within the meaning of the resolution of 21st January 1843, Pamph. L. 367, Purd. Dig. 90, pl. 1, which declares, " It shall not be lawful for any company incorporated by the laws of this Commonwealth, and empowered to construct, make and manage any railroad, canal or other public internal improvement while the debts and liabilities, or any part thereof incurred by the said company to contractors, laborers and workmen employed in the construction or repairs of said improvement remain unpaid, to execute a general or partial assignment, conveyance, mortgage or other transfer of the real or personal estate of the said company, so as to defeat, postpone, endanger or delay their said creditors, without the written assent of the said creditors first had and obtained ; and any such assignment, conveyance, mortgage or transfer shall be deemed fraudulent, null and void, as against any such contractors, laborers and workmen, creditors as aforesaid :" and of the Act of 4th April 1865, Pamph. L. 235, Purd. Dig. 91, which provides : " Whereas, it frequently happens that incorporated companies, by assignment, conveyance, mortgage or other transfer, divest themselves of their real and personal estate, in contravention of the provisions of the resolution of January 21st 1843 : therefore, " Be it enacted, that whenever any incorporated company, subject to the provisions of the above resolution, shall divest themselves of their real or personal estate, contrary to the provisions of the said resolution, it shall and may be lawful for any contractor, laborer or workman employed in the construction or repair of the improvements of the said company, having obtained judgment against the said company, to issue a scire facias upon said judgment, with notice

to any person, or to any incorporated company, claiming to hold or own said real or personal estate, to be served in the same manner as a summons, upon the defendant, if it can be found in the county, and upon the person or persons, or incorporated company, claiming to hold or own such real estate; and if the defendant cannot be found, then upon the return of one *nihil* and service as aforesaid, on the person or persons, or company claiming to hold or own as aforesaid, the case to proceed as in other cases of scire facias on judgment against terre tenants."

The case, by agreement, was submitted without the intervention of a jury, and the court, Butler, P. J., filed an opinion as follows :—

"This question, in my judgment, must be determined in the plaintiff's favor.

"A civil engineer, employed in the construction of a railroad, is, I think, within both the letter and spirit of the statute. 'Laborer' and 'workman' are synonymous terms. An engineer (thus employed) is a workman; he works on the ground continually, from the commencement to the completion of the road. And his work is physical as well as mental. He makes diagrams and plans, ascertains and marks the lines and grades, and directs and superintends. It is skilled work. But so is that of the mechanic who builds the bridges, and whether he be the master, who simply directs, or the man who uses the tools, it is not doubted that he is within the statute.

"The object of the legislature was to give those whose skill and labor create the structure, a special hold upon it for compensation. The language should, therefore, receive a reasonable construction, with a view to this object. While it should not be strained, it should not be confined to the narrowest sense in which it might be understood. The Act of June 1836, relating to mechanics and others employed in erecting buildings, had a similar object; and while the language employed there is less comprehensive, it is held to embrace the services of an architect who draws plans for and superintends the construction of a building. The language of the court in Bank v. Gries, 11 Casey 423, where this is decided, is quite as applicable to the case before us. Conant v. Van Schaick, 24 Barb. 99, shows that the courts in New York have taken the same view of a similar statute there.

"Judgment must for these reasons be entered for the plaintiff."

This judgment was the error assigned.

*Wm. Darlington*, for plaintiff in error.—A laborer is one who labors in a toilsome occupation; a man who does work that requires little skill as distinguished from an artisan. A workman is a man employed in labor, whether in tillage or manufactures. A civil engineer is not within the meaning of either of these definitions. The obvious intent of the legislature was to provide security for

[Pennsylvania and Delaware Railroad Co. *v.* Lcuffer.]

those only who are least able to take care of themselves, and this is indicated by all the legislation in this direction. If the view of the court below is correct every one who works or labors for a railroad, in whatever capacity, is entitled to protection under this resolution. Bank *v.* Gries, 11 Casey 423, does not apply, and Conant *v.* Van Schaick, 24 Barb. 99, differs materially from this case. By the general railroad law of New York, passed in 1850, all the stockholders of a railroad company are jointly and severally liable for all the debts owing to any of its laborers and servants for services performed for the corporation. Under this law, a civil engineer was allowed to recover for his services, and the court said: "The engineer, the master mechanic, the contractor, is as fully entitled to its benefits as is the man who shovels gravel. The latter is, in law, no more and no less a servant of the company then either one of the former."

A contractor who employs hands is not entitled to exemption, although he labors with them: Heebner *v.* Chave, 5 Barr 115. Wages of laborers, which the statute was designed to protect, are the earnings of the laborer by his personal manual toil: Smith *v.* Brooke, 13 Wright 150.

*John J. Pinkerton,* for defendant in error.—In construing the Act of 16th June 1836, Pamph. L. 696, relating to the liens of mechanics in Bank of Pennsylvania *v.* Gries, 11 Casey 423, it will be observed that a professional man may still be a "laborer" or "workman" where he gives his personal supervision to the work of construction. In the construction of the Act of 15th April 1845, Pamph. L. 460, "that the wages of any laborer or the salary of any person in public or private employment shall not be liable to attachment in the hands of the employer," this court, in Pennsylvania Coal Co. *v.* Costello, 9 Casey 241, held that the wages of a "skilled miner" were not attachable. This decision is of value in indicating the change of the law, as expressed in Heebner *v.* Chave, 5 Barr 115, where a very restricted construction was placed upon the word "laborer," holding that only the wages earned by the "hands and labor" of the individual himself were contemplated by the act. In the Company *v.* Costello, the court goes further, and holds that superior skill and care of the person performing the services may entitle him to larger compensation than the ordinary laborer, and that such compensation is still within the meaning of the act, is "the wages of the laborer," and is not liable to attachment. Conant *v.* Van Schaick, 24 Barb. 90, was the case of a civil engineer and is very analogous to this.

Mr. Justice GORDON delivered the opinion of the court, May 7th 1877.

The scire facias of the plaintiff below is founded upon a judgment

[Pennsylvania and Delaware Railroad Co. *v.* Leuffer.]

obtained by him, against the Pennsylvania and Delaware Railroad Co., for services rendered to it as engineer in the construction of its improvements. He claims judgment against the defendant, in the present case, lessee of the company above named, by virtue of the provisions of the resolution of the General Assembly of January 21st 1843, and its supplement of April 4th 1862. These acts, in effect, give a lien to "contractors, laborers and workmen," upon the railroads and other works and property of public companies, for the debts and liabilities accruing to them in the construction and repair of such roads and works. Whether the plaintiff can maintain his claim against the defendant depends upon whether he can bring himself within the class designated in the statute as "laborers and workmen." We are, then, to inquire what the legislature intended by the use of these words. In seeking for this legislative intent we must give to the language of the statute its common and ordinary signification. But ordinarily these words cannot be understood as embracing persons engaged in the learned professions, but rather such as gain their livelihood by manual toil. When we speak of the laboring or working classes, we certainly do not intend to include therein persons like civil engineers, the value of whose services rests rather in their scientific than in their physical ability. We thereby intend those who are engaged, not in head, but in hand work, and who depend upon such hand work for their living.

Worcester defines a laborer to be, "one who labors; one regularly employed at some hard work; a workman; an operative; often used of one who gets a livelihood at coarse manual labor, as distinguished from an artisan or professional man." In like manner a workman is defined as "one who works; one employed in any labor, especially manual labor." So, if we consult the older English statutes, as that of 1 Jac., ch. 6, which provides that the statute of 5 Eliz. shall extend to the rating of all "laborers, weavers, spinsters, or workmen or workwomen, either working by the day, week, month or year, or taking any work by the great or otherwise," we cannot doubt but that the terms "laborers" and "workmen" were intended to include only such as were engaged in manual occupations. This limited meaning has been invariably attached to them and similar words when used in our own statutes. In Heebner *v.* Chave, 5 Barr 115, the Act of 1845, prohibiting the attachment of laborers' wages, came up for construction, and it was held that that act was intended to secure to the manual laborer the fruits of his own work, for the subsistence of himself and family, and that it did not embrace the earnings of a contractor. So in Smith *v.* Brooke, 13 Wright 147, "wages of laborers" were defined to be the earnings of the laborer by his personal, manual toil. In like manner, servants' wages, treated as preferred debts in the settlement of the estates of decedents, under the Act of 1794, were held to be the earnings of such servants only as make part of a man's

[Pennsylvania and Delaware Railroad Co. *v.* Leuffer.]

household, and whose business it is to assist in the economy of the family ; in short, menial servants : In re Meason, 5 Binn. 167. Thus we may see that in these, as in many other cases which we might cite, this limited sense has been given to the words laborers, workmen, servants and the like, and this for the very obvious reason that in all statutes of this kind the intent has been to protect a class of persons who are wholly dependent upon their manual toil for subsistence, and who cannot protect themselves. This same result was reached in the very recent case of Wentroth's Appeal, 1 Norris 469, in the construction of the Act of April 9th 1872, per Mr. Justice SHARSWOOD. It is true, in one sense the engineer is a laborer; but so is the lawyer and doctor, the banker and corporation officer, yet no statistician has ever been known to include these among the laboring classes. We cannot, therefore, even to save a meritorious claim, undertake to make a new classification, which must necessarily defeat the statutory intent.

Judgment is reversed.