## Perry, Jr. v. Retirement Board of City of Harrisburg

*Bruce E. Cooper*, for plaintiffs.
*Francis B. Haas*, for defendants.

MORGAN, J., December 20, 1973.—This is an equity action by eight employes of the City of Harrisburg and the union to which they belong to enjoin the retirement board from requiring plaintiff-employes to make retroactive payments into the city's nonuniformed pension fund and to enjoin the mayor from discharging them for refusal to do so.

The matter is before us on the mayor's exceptions to the chancellor's adjudication that plaintiffs, Rogers, Mills, Musa, Witmer, Smith and Clark, are "per diem laborers" who, under the applicable statute and ordinance, have the option but cannot be compelled to contribute to the pension fund. The retirement board did not file exceptions.

On April 19, 1969, the Harrisburg City Council passed an ordinance, signed by the mayor, creating a new retirement system for the city. Inter alia, this ordinance provided that all officers and employes of the city would be required to contribute from their salaries a certain percentage into this retirement fund. The contributions were to be deducted from their wages. Under section I., 173.14, it was provided that:

"No person holding a position in the City as a laborer, at a per diem wage, shall be compelled to join this Retirement System and to pay or contribute toward the Fund herein provided for, but he shall have the option of electing to do so, and shall only, upon electing to contribute to the Fund, become entitled to the pension benefits provided by this Ordinance. Such election must be made within ninety (90) days of the date of employment for new employees and within ninety (90) days of the date of the final passage of this Ordinance for present employees. He shall contribute to the Fund at the same rate as other members thereof. Once a laborer, at a per diem wage, elects to join the

Fund and is accepted by the Board, he cannot withdraw as a member at a later date."

This particular provision of the ordinance was in keeping with the Third Class City Code, the enabling legislation dealing with pensions, which provided in the Act of June 23, 1931, P. L. 932, art. XLIII, sec. 4345, as amended, 53 PS §39345:

"Any person holding a position in any such city as a laborer, at a per diem wage, shall not be compelled to pay or contribute toward the pension fund herein provided for, but shall have the option or choice of so doing and, in that event only, of becoming entitled to the pension provided by this act."

Each of the plaintiff-employes in this case was hired as a per diem employe and was advised at the time of employment that since he was a laborer and per diem, it was optional as to whether or not he elected to join the retirement system. Based upon this representation, each elected not to join the pension plan and thereafter made no contributions. Nor were they asked to do so from the date of their employment until by memorandum dated June 22, 1973, they were informed of the amount of the retroactive contribution and required to make payment by July 15, 1973, or suffer dismissal.

Plaintiffs in this case are required, under the pension board's ruling, to make the following lump-sum retroactive payments:

| | |
|---|---|
| Robert A. Rogers | $1,531.30 |
| James H. Mills | 516.48 |
| Joseph J. Musa | 553.20 |
| Junior O. Witmer | 449.00 |
| George L. Smith | 818.65 |
| Samuel Clark | 1,159.81 |

Defendant agrees that if plaintiff-employes are "laborers at a per diem wage" they cannot be com-

pelled to pay or contribute into the pension fund under the terms and provisions of section I., 173.14 of the ordinance. It is also conceded by defendant that plaintiffs are "per diem" employes, so that the only issue is whether the six named employes are "laborers."

In making his adjudication, the chancellor simply applied to the testimony of plaintiffs (the city offered none) the definition of "laborer" given by the city solicitor in this matter to the city controller on March 8, 1973, which reads as follows:

"1. *Laborers being paid on an hourly basis.* In that category I include only those who are performing tasks which would be of such a nature as to categorize such employees as 'laborers' as that term is generally used and has been defined for legal purposes. As defined in McQuillan on Municipal Corporations, a 'laborer' is ordinarily to be interpreted '. . . not in its broad and general sense, but in its common and usual acceptation as a term to specify those whose services are manual and menial—those not responsible for independent actions but who do a day's work or stated job under the direction of a boss or superior.' "

The most cursory review of the testimony establishes that plaintiff-employes come within the foregoing definition which may explain why it is no longer asserted; at least not in the argument on exceptions. The city now, in substance, advances the familiar Webster definition that a "laborer" is "one who does physical labor; one who works at a toilsome occupation; esp., a person who does work that requires strength rather than skill, as distinguished from artisans and from the professional classes." It contends that plaintiff-employes are not "laborers" within this definition because they are either "mechanics"

who, according to the city are at the level of artisans, or because although they may do physical labor it does not involve real physical exertion.

Regardless of how loosely the local garageman may use the term, we think that "mechanic" still means a skilled workman and it is obvious from the testimony that these employes, while they may from time to time work with the master mechanic in making repairs, have no such skill. Their own supervisor, the City's Chief of the Bureau of Sewage, testified on their behalf that Rogers, Smith, Musa and Witmer initiated no work; that what they did was primarily manual; to keep the place cleaned. Nor do we think that the degree of exertion involved in the physical effort will serve to make these employes any less "laborers." If, as the city seems to imply, the term ever included only the sweaty push, pull or lift of straining muscles, we hold that it no longer does.

In any given case, the question of whether or not an employe is a laborer must be determined with reference to its own particular facts and circumstances and in this case they are as follows:

*Robert A. Rogers:* Mr. Rogers was hired by the city in April of 1963 to cut grass and rake leaves for the Parks Department. He has a ninth grade education, and at the time of hiring was told that he did not have to join the pension plan. In 1967, he transferred to his current position at the sewage treatment plant. His job entails helping to repair pumps, digging ditches, cleaning up, planting flowers and cutting grass at times, as well as repairing chains and "anything that would break down I helped to repair." He has had no technical training of any kind. He does no actual mechanical work without help of other maintenance people. His work is done under supervision. The simple type of mechanical work that he does does

not require any special skill and all his work is manual work. According to Rogers, the first time he knew he was supposed to be a mechanic was at the time of the hearing. He earns approximately $6,000 per year and is paid on an hourly basis at the rate of $3.21 per hour.

*James H. Mills:* Mr. Mills was hired in 1971 as a laborer. At the time of hire he was specifically asked if he could do painting and putting in stop signs. His education terminated with the second year in high school. Although he has been given the high sounding title of Assistant Parking Meter Technician, his testimony is that he works with the meter man. installing poles and then going out and placing stop signs. In short, his job consists of digging a hole, putting a pole in it and filling it with cement. He also paints the lines in the streets. He is paid at the rate of $2.43 per hour and his annual wages are approximately $5,500. He is under the supervision of another employe and he does no mechanical work.

*Joseph J. Musa:* Mr. Musa was hired in May of 1971 by Mr. Ravida. He receives an hourly rate of $2.86. His duties are "most anything around the plant; check valves, check water traps, check the equipment, see that it's all running, and clean-up work such as windows, washing grease off the walls, hose down grease and mud." Ninety percent of his work is manual. He works under the supervision of another employe. His prior work experience was in the steel mill, as a janitor, and in a service station. The only type of mechanical work that he does would be something minor, like tightening a bolt or nut. Anything more than that he would have to report to the maintenance gang. Half of his time involves cleaning up.

*Junior Witmer:* Mr. Witmer was hired in January of 1967 by Mr. Ravida. He does the same kind of work

as Mr. Musa at the main sewage treatment plant. He "runs grease," cleans walls, washes windows, and does whatever he is asked to do. He earns $2.66 per hour. He completed two years of high school. He is under the supervision of another employe. He does not do any repair work other than perhaps tightening something or repairing a chain. He earns approximately $5,500 a year. He has no technical educational training and on occasion is engaged in scrubbing floors and walls and cleaning out tanks.

*George L. Smith:* Mr. Smith was hired in June of 1970 as a laborer assigned to the sewage department. Mr. Smith starts the automatic incinerator in the morning and reads gauges. He earns $2.86 per hour, about $5,900 annually. He graduated from high school but has taken no technical courses of any kind and stated that anybody could learn his job. He also runs grease, cleans the digester, cleans tanks and does the same duties as Mr. Witmer and Mr. Musa.

*Samuel Clark:* Mr. Clark was hired in 1968 as a night watchman and earns something over $2 an hour. His annual earnings approximate $4,800. He works on the night shift and stays at the pool to keep people out. He also cuts grass. At the most, the pool is open 15 to 20 minutes when Mr. Clark is on duty. He has completed ninth grade in school and his previous employment was as a laborer in construction work. There was no testimony that he had any police powers.

This case calls for no recondite exposition on what is a "laborer." The definition was stated with a refreshing succinctness in Pennsylvania and Delaware Railroad Co. v. Leuffer, 84 Pa. 168 (1877): "We thereby intend those who are engaged, not in head, but in hand work." These employes think they are laborers, as did the city at the time they were hired and for years

thereafter until the time of these proceedings; and so do we.

## FINAL DECREE

And now, December 20, 1973, the exceptions of defendant, Harold A. Swenson, Mayor of the City of Harrisburg, are dismissed and a final decree is entered in favor of plaintiffs, Robert A. Rogers, George L. Smith, Joseph Musa, Junior O. Witmer and Samuel Clark. The prothonotary is directed to notify the parties or their counsel; costs are to be paid by defendant.